EMMA KAUFMANN PALMER, APPELLANT, v. THOMAS E. PARMELE, APPELLEE.

FILED OCTOBER 13, 1917. No. 20196.

1. **Pledges:** SALE: LIABILITY FOR SURPLUS. If a creditor who holds collateral security for his claim sells the securities and realizes more therefor than the amount of his claim, and refuses to pay the owner of the securities the remainder of the money received therefor after satisfying his claim, he is liable in an action for conversion of such surplus.

2. ——: ——: ——. The facts in this case, stated in the opinion, required the defendant to account to the owner of the collateral for the amount received and applied thereon by defendant.

APPEAL from the district court for Cass county: JAMES T. BEGLEY, JUDGE. *Reversed.*

*D. O. Dwyer,* for appellant.

*Jesse L. Root* and *C. A. Rawls, contra.*

SEDGWICK, J.

In the early part of 1910 the defendant sold to William Volk for $15,000 gold coupon bonds of $10,000 face value and preferred stock of $5,000 face value in the Norfolk Long Distance Telephone Company of Norfolk, Nebraska. Volk left this stock with Parmele for safe-keeping, and took Mr. Parmele's receipt reciting that fact, in which it is also agreed that the stock should remain in the Bank of Commerce of Louisville, Nebraska, in which the defendant was interested, for the term of five years, "and the income to be paid over to William Volk as paid." After Mr. Volk's death this plaintiff began this action against the defendant to recover the value of the stock, alleging that Mr. Volk in his lifetime, "being engaged to be married to plaintiff, gave said bonds and stock to plaintiff, and at the time delivered the same to plaintiff by delivering to her said written instrument of the defendant." She appears to have had the defendant's receipt for the stock in her possession. The defendant alleged that he had no notice of such gift by William Volk to the plaintiff, and that Mr. Volk had in his lifetime deposited the stock with this defendant as collateral security for such loans of money as the defendant and the banks in which the defendant was interested might make to Mr. Volk, and that he and the banks had pursuant to that agreement loaned to Mr. Volk money at different times amounting in the aggregate to a large sum, and that all of the property of the Norfolk Company (of

which the bonds in question were part) had been sold, upon an action in foreclosure of the bonds, and that the amount realized was not sufficient to pay the bonds, and the *pro rata* share applicable upon the $10,000 bonds of Mr. Volk was not sufficient to pay the indebtedness of Mr. Volk so incurred to the defendant and the said banks. The jury found a verdict for the defendant, and, judgment being entered thereon, the plaintiff has appealed.

It is not claimed that the defendant by this transaction with Volk became the owner of the bonds and stock. If the money advanced thereon to Volk was repaid the defendant had no right in the surplus value of the bonds and stock. It appears to have been held upon the former appeal in this case (*Kaufmann v. Parmele,* 99 Neb. 622) that the evidence was not disputed that the plaintiff was the owner of the bonds and stock, subject to such interest as the defendant might have in the same as collateral security. At the foreclosure sale all of the property of the Norfolk Long Distance Telephone Company was purchased in the name of this plaintiff for $20,000, and as that was two-thirds of the appraised value the same was confirmed by the court. The defendant insists that that fixed the value of the property and therefore the amount that could be applied upon the bonds, and established that the stock was worthless as the property was insufficient to pay the bonds which was the first lien upon all the property of the company.

The amended petition of the plaintiff sues as for a conversion, and much of the discussion in the briefs is upon the question whether this sale regularly made in the interest of all parties could amount to a conversion on the part of the defendant. We cannot see that this discussion is important. It appears that the defendant immediately transferred all of the property of the company to the Nebraska Telephone Company and received $50,-000 for it. This money was paid to the Norfolk Long Distance Telephone Company and was distributed to the

bondholders in proportion to the amount of their bonds. In this distribution this defendant received that part of the $50,000 which was apportioned to the $10,000 of bonds in question. If he held these bonds as collateral security, as he says, this money, the proceeds of the bonds, was also collateral security, and, while he might properly apply so much of it as was necessary to extinguish the indebtedness for which the bonds were held as security, the remainder of the money, if any, would belong to Volk or his assignees, and to refuse to pay it over would be a conversion. There is no doubt under this evidence that this $50,000 must be considered as the proceeds of the sale of the property of the company. The evidence of the president of the company, who was called as a witness by the defendant, established that fact. He testified that before the foreclosure there were negotiations between the officers of the Norfolk company and the officers of the Nebraska Telephone Company in which it was understood that the Nebraska Telephone Company would pay $50,000 for the property to the Norfolk company if a clear title to all the property could be transferred. He says that to carry out this arrangement the foreclosure was decided upon, and that the defendant was one of the officers of the company who assisted in the whole of the proceedings, and as this money which the Nebraska Telephone Company paid for the property went to the Norfolk Company pursuant to this understanding and this sale, it follows that the defendant as an officer of the company purchased in this property at the sale for the benefit of the company itself. Therefore the proportion of the $50,000 that was applied upon this stock should have been accounted for to this plaintiff.

The only question remaining is as to the amount then owing to the defendant and the banks he was interested in for which these bonds were collateral. The total amount of the bonds outstanding was $79,000. The proportion of the $50,000 that should have been applied up-

on these bonds would therefore be $6,329.10.  Mr. Wood, who was cashier of the bank where Volk's business was principally transacted, testified that these bonds were held as collateral to loans to Volk by the bank and defendant, and was then asked: "I will ask you if you ever figured up the amount due from Mr. Volk to Mr. Thomas Parmele, the defendant in this case, and the Bank of Commerce?  A. About the time of Mr. Volk's death, when everything ·was closed up, it was in the neighborhood of $4,600."  If this estimate is somewhere near the truth, the amount received for the bonds in question was "in the neighborhood" of $2,000 more than was chargeable against them.  The value of these bonds, less the amount loaned thereon and not returned, would be the measure of the plaintiff's recovery, with interest from the date of the receipt of the $50,000.  This is the only question left in doubt, and the case will be remanded for determination of the amount properly chargeable against these bonds on account of advancements to Volk.

REVERSED.

The following opinion on motion for rehearing was filed December 22, 1917.  *Rehearing denied.*

SEDGWICK, J.

It is stated in the brief upon the motion for rehearing that "some outstanding bills" and a note to the bank were deducted from the $50,000 which was received for the property of the Norfolk Company, thereby reducing the amount actually received.  Our opinion, in which it was said that the amount that should have been applied upon these bonds would be $6,329.10, is modified; and, in addition to the question heretofore submitted to the trial court, that court will also determine whether there were deductions made from the $50,000 purchase price, and so ascertain the net amount received by the Norfolk Company, and compute the

proportion that should have been applied upon these bonds accordingly. It is claimed that there are other errors in the opinion, but it does not appear that they affect the result. The motion for a rehearing is

OVERRULED.